**Case No. 12-55712**

*In the*
**United States Court of Appeals**
*For the*
**Ninth Circuit**

PAUL JUNOD and PATRICIA JUNOD,

*Plaintiffs-Appellants,*

v.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; WELLS FARGO HOME MORTGAGE D/B/A AMERICA'S SERVICING COMPANY; U.S. BANK, N.A. AS TRUSTEE FOR CSMC MORTGAGE-BACKED TRUST 2006-6

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Central District of California*
*Case No. CV11-7035-ODW (VBKx) - Honorable Otis D. Wright*

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

Penelope P. Bergman, Esq.
Deborah P. Gutierrez, Esq.
BERGMAN & GUTIERREZ LLP
6100 Center Drive, Suite 1050
Los Angeles, CA 90045
(310) 893-6200 Telephone
(310) 988-2930 Facsimile

*Attorneys for Plaintiffs Paul Junod*
*and Patricia Junod*

December 20, 2012

## <u>TABLE OF CONTENTS</u>

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................................1

INTRODUCTION ................................................................................................1

ARGUMENT ........................................................................................................3

A.  Plaintiffs Adequately Pled a Valid and Independent Claim for Declaratory

Relief ............................................................................................................3

B.  Plaintiffs Have Standing To Assert That U.S. Bank and ASC Are Not Their

Creditors......................................................................................................4

   1.   Plaintiffs Meet the Article III Requirements To Establish Standing ...........4

   2.   Plaintiffs Meet the Prudential Considerations To Establish Standing .........5

C.  Defendants Fail to Present or Apply Authoritative Law Based Upon a Proper

Choice-of-Law Analysis ...............................................................................7

   1.   Pursuant to Choice of Law Principles, the Laws of the State Designated in

the Trust Agreement Control Its Construction ...................................................8

   2.   The Relevant Trust Agreement Contains a New York Choice of Law

Provision ...........................................................................................................8

   3.   Pursuant to New York Common Law and Statutory Law, There was No

Valid Conveyance of Plaintiff's Mortgage Loan To the CSMC Trust ..............9

4.   Defendants Fail To Provide Any Legal Authority Showing New York Law

Does Not Apply ................................................................................11

D.   A Trustee Acting on Behalf of a Trust That Does NOT Actually Own the

Loan Is Not Subject to an Exemption from FDCPA liability as a "Creditor" or

for Foreclosure-related "Debt Collection Activity" ...........................................14

E.   Plaintiffs Properly Pled A Cause of Action For Business and Professions

Code §17200 ................................................................................17

1.   Plaintiffs' SAC Alleges Ongoing, Unlawful Conduct by Defendants........17

2.   The SAC Articulates Defendants' Personal Participation in Unfair,

Unlawful, and Fraudulent Practices...................................................19

3.   Violations of Any Federal, State, or Local Law May Serve as the Basis for

a UCL Claim................................................................................19

F.   Defendants Improperly Include Additional Extraneous Issues Which Are

Inapplicable And Not Asserted by Plaintiffs .......................................................21

CONCLUSION ...................................................................................26

CERTIFICATE OF COMPLIANCE.......................................................26

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. Co. of Harford, Conn. v. Haworth*,

   300 U.S. 227 (1937)........................................................................4

*Anderson v. Mather*,

   44  N.Y.  249 (N.Y. 1870). ..........................................................10

*Bridge v. Ocwen Federal Bank, FSB*,

   -- F.3d ----, 2012 WL 1470146, *3 (6th Cir. April 30, 2012) ............15

*Brown v. Spohr*,

   180 N.Y. 201 (N.Y. 1904) ...........................................................9

*Castro v. Bank of America, N.A.,*

   Case No. CV-11-6142-GHK (AJWx) (C.D. Cal. December 19, 2011) ..............14

*Cockrell v. Title Ins. & Trust Co.,*

   42 Cal.2d 284 (1954) ...................................................................6

*Davis v. HSBC Bank*,

   691 F.3d 1152 (9th Cir. Cal. 2012).................................................20

*Dye v. Lewis*,

   324 N.Y.S.2d 172 (N.Y. Sup. Ct. 1971)..........................................10

*Ehrenclou v. MacDonald,*

   117 Cal.App.4th 364 (2004). ........................................................8

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,

    837 F. Supp.2d 162, 183 (S.D.N.Y. 2011) .................................................... 11,12

*Emery v. Visa Int'l Service Ass'n*,

    95 Cal.App.4th 952 (2002) ...................................................................19

*Gladstone Realtors v. Village of Bellwood*,

    441 U.S. 91 (1979)................................................................................4

*Gomes v. Countrywide Home Loans, Inc.*,

    192 Cal.App. 4th 1149 ................................................................ 21, 22

*Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.*

    (9th Cir. 1990) 896 F2d 1542, 1555 ....................................................3

*In re Application of Dana*,

    465 N.Y.S.2d 102 (N.Y.Sup. Ct. 1982);.............................................10

*International Soc. for Krishna Consciousness of Calif., Inc. v. City of Los Angeles*,

    530 F.3d 768, 770 (9th Cir. Cal. 2008)...............................................22

*Johnson v. Fankell*,

    520 U.S. 911 (1997)...........................................................................22

*Kermani v. Liberty Mut. Ins. Co.*,

    4 A.D. 2d 603 (N.Y. App. Div. 3d Dep't 1957)...................................9

*Korea Supply Co. v. Lockheed Martin Corp.*

    29 Cal.4th 1134 (2003) ......................................................................19

*Lane v. Vitek Real Estate Indus. Grp.*,

    713 F.Supp.2d 1092 (E.D. Cal. 2010) ..................................................20

*Levine v. Blue Shield of California*,

    189 Cal. App. 4th 1117(2010) ........................................................20

*Lona v. Citibank, N.A.*,

    2011 WL 6391584, *14-16 (Cal. App. 6 Dist. Dec. 21, 2011) ..........................24

*Lujan v. Defenders of Wildlife*,

    504 U.S. 112 S. Ct. 2130 (1992)....................................................4, 5

*Mangini v. Aerojet-General Corp.*

    230 Cal. App. 1125 (1991) ..........................................................17

*Marin County Bd. of Realtors, Inc. v. Palsson*,

    16 Cal.3d 920 (1976) ...............................................................18

*Miller v. Homecomings Financial LLC et al.*,

    Case No: 4:11-cv-04415 (S.D. Tex. Aug. 8, 2012)....................................24

*Ohlendorf v. Am. Home Mortg.*,

    No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at *21-24 (E.D.

    Cal. March 31, 2010) ...............................................................22

*Onofrio v. Rice*,

    55 Cal. App. 4th 413, 424 (1997) ...................................................24

*Perry v. Stewart Title Co.*,

756 F.2d 1197 (5th Cir.1985) ..............................................................15

*Robinson v. United States*,

632 F.2d 822 (9th Cir. 1980) ................................................................8

*Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM

(CWx), 2011 U.S. Dist. 2011 WL 2533029 at *9-10 (C.D. Cal., June 24, 2011)24

*Santens v. Los Angeles Fin.*,

91 Cal.App.2d 197 (1949) .....................................................................6

*Societe de Conditionnement v. Hunter Engineering Co., Inc.,*

655 F.2d 938 (9th Cir. 1981) ................................................................3

*Tamburri v. Suntrust Mortgage, Inc.*,

No. C-11-2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011) ................25

*United Farm Workers of America v. Dutra Farms*,

83 Cal.App.4th 1146 (2000). ...............................................................18

*Valley Forge Christian College v. Americans United for Separation of Church &*

*State, Inc.*,

454 U.S (1984) .....................................................................................6

*Vincent v. Putnam*,

248 N.Y. 76 (N.Y. 1928). ....................................................................9

*Vogan v. Wells Fargo Bank, N.A.*,

   No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, *7-8 (E.D. Cal. Nov. 17,

   2011) ..............................................................................................24

*Wadlington v. Credit Acceptance Corp.*,

   76 F.3d 103, 106–8 (6th Cir.1996) ....................................................15

**Statutes**

15 U.S.C. § 1692 ................................................................... 16,15, 19

15 U.S.C. §1641(g) ........................................................................19

Cal. Bus. & Prof. Code § 17200 ................................................ 17, 18, 19

Cal. Bus. & Prof. Code § 17500 ......................................................19

Cal. Civ. Code § 2924(a)(1)................................................................6

Cal. Penal Code § 532f (a)(4) ........................................................19

Cal. Prob. Code § 21103 ..................................................................8

Fed. R. Civ .P. 57 ..........................................................................3

**Other Authorities**

N.Y. Est. Powers & Trusts § 7-2.4 (CLS 2012) ................................. 10,11

New York Common Law...............................................................9, 10

New York Trust law.......................................................................11

Restat. 2d of Conflict of Laws, §268 ....................................................8

The Law of Trusts, § 2.1.22 (5th Ed. 2006)..............................................................12

The Yale Law Journal, 107 Yale L.J. 166,166 (1997-1998) ....................................13

William Xenephon Weed, Warren's Weed New York Real Property Ch. No. 14-

140, § 140.58 (Matthew Bender 2012)....................................................................9

N.Y. G.O.L. § 13-107 ................................................................................................12

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

Whether Plaintiffs may bring an independent cause of action for declaratory relief?

Whether Plaintiffs sufficiently pled an underlying controversy between the parties regarding the validity of the assignment and transfer of beneficial interest that would permit the authorized party to foreclose?

Whether the lower court erred in ruling as a matter of law, on a Motion to Dismiss Plaintiffs' Cause of Action for Cancellation of Instruments, that the Assignment from Mortgage Electronic Registration Systems, Inc. ("MERS") to U.S. Bank was lawful and that Defendants had the right to initiate the foreclosure sale.

Whether Plaintiffs adequately alleged that Defendant U.S. Bank is a "debt collector" as defined by the Federal Debt Collection Practices Act ("FDCPA")?

Whether Plaintiffs adequately pled an act or practice which is unlawful or unfair?

Plaintiffs submit that the answer to each of these questions is yes.

## <u>INTRODUCTION</u>

Defendants fail to justify why the District Court's Order granting Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint was proper. Plaintiffs contend that the lower court erred in failing to take as true their

1

specific factual allegations demonstrating the CSMC Trust was not their true creditor and was never assigned their Note and Deed of Trust.  The issues involved in this case are simple and concise:  was there a valid delivery of Plaintiffs' Note and Deed of Trust to the CSMC Trust?  This inquiry requires an examination of the terms of the trust instrument construed under the laws of New York where the Trust was created.  Plaintiffs contend that there was no valid conveyance of their mortgage loan to the CSMC Trust.

Defendants have failed to articulate any credible explanation supported by applicable legal authority as to why this Court should not overturn the District Court's ruling.  While Defendants attempt to side-step these issues by arguing that Plaintiffs lack "standing" to sue Defendants, binding California appellate case law, which is virtually ignored in Defendants' brief, clearly rejects this claim.

In sum, Plaintiffs contend that their fact-specific allegations sufficiently support their causes of action.  Accordingly, Plaintiffs respectfully request that this Court overturn the lower court's order dismissing their Second Amended Complaint.

///

///

///

///

2

# ARGUMENT

## A.    Plaintiffs Adequately Pled a Valid and Independent Claim for Declaratory Relief

The Declaratory Judgment Act creates an independent cause of action for parties seeking clarity as to their ongoing obligations and potential liability in advance of performance. *Societe de Conditionnement v. Hunter Engineering Co., Inc.,* 655 F.2d 938, 943 (9th Cir. 1981); *see also Hal Roach Studios Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir. 1990). Here, Plaintiffs alleged an actual case and controversy affecting Plaintiffs' legal rights of sufficient immediacy:  whether Defendants were assigned Plaintiffs' Loan and conducted a lawful foreclosure. **ER 244:26-245:3, 248:19-249:21.**  Despite the fact that this declaratory relief is not duplicative of other relief sought by Plaintiffs under the other causes of action pled, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ .P. 57; Fed. R. Civ. P. 57 1937 Advisory Committee Notes.

Defendants have failed to articulate any basis which would preclude Plaintiffs from seeking declaratory relief.  Instead, Defendants deviate from this concise issue and argue that Plaintiffs lack "standing" to advance factual allegations that U.S. Bank is not their true creditor with the right to foreclose.

**B.**     **Plaintiffs Have Standing To Assert That U.S. Bank and ASC Are Not Their Creditors**

Contrary to Defendants' assertions, Plaintiffs have standing to bring these claims.  "Standing" to sue is a jurisdictional limitation.  The doctrine of standing is comprised both of constitutional or "Article III" requirements and of "prudential considerations."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979).

### 1.     Plaintiffs Meet the Article III Requirements To Establish Standing

In order to establish "a case or controversy" within the meaning of Article III, Plaintiffs must show the following:  1) injury in fact; 2) causation; and 3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The "injury in fact" requirement is met upon a showing that plaintiff is threatened with impairment of their own interests.  *See Gladstone Realtors*, 441 U.S. at 100.  Here, Defendants have claimed a right to collect payments from Plaintiffs and asserted a stake in their Property.  Thus, Plaintiffs have alleged sufficient facts to meet the requisite "injury in fact" element.  *See Aetna Life Ins. Co. of Harford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) (a substantial controversy between parties having adverse interests of sufficient immediacy and reality are justiciable as a case and controversy under Article III).

4

In addition to an "injury in fact," there must be a causal connection between the injury and the conduct complained of. *Lujan*, 504 U.S., at 559-560. Here, Defendants have asserted purported rights under the Deed of Trust, which Plaintiffs dispute, including the power to collect payments and invoke the non-judicial foreclosure statute to take Plaintiffs' home. Plaintiffs' claimed injury – taking of their Property – is directly caused by Defendants' conduct. Thus, Plaintiffs sufficiently allege the required causal connection between the injury and Defendants' conduct.

Finally, there must be a substantial likelihood that the relief sought, if granted, will redress the injury. *Lujan*, 504 U.S., at 559-560. Here, Plaintiffs seek an adjudication of the parties' respective rights to the Property and under Plaintiffs' Loan. Thus, the declaratory and injunctive relief sought here will redress Plaintiffs' injury and determine whether their home was taken by the true creditor.

## 2. Plaintiffs Meet the Prudential Considerations To Establish Standing

In addition to the immutable requirements of Article III, federal courts have adopted a set of prudential principles that preclude the exercise of jurisdiction over some types of cases in which Article III standing exists: 1) Plaintiffs' claim must fall within the "zone of interests" sought to be protected or regulated by the statute

or constitutional guarantee in question; 2) the claim must be for injury to Plaintiffs' own legal rights and interests, rather than the legal rights or interest of third parties; and 3) the injury must be individualized or confined to a discrete group. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-475 (1984).

Plaintiffs' claims fall within the zone of interests sought to be protected under the U.S. Constitution – a taking of their property—and the state statutory protections under Cal. Civ. Code § 2924(a)(1)—which grants only the "beneficial party or his agent" the right to foreclose on their Property. Long-standing California case law has similarly recognized that only the "owner of the note" or his "agent" can enforce a note and deed of trust.[1]

Defendants mischaracterize Plaintiffs' factual allegations that Defendants failed to deliver the Note and Deed of Trust properly as an attempt to enforce the terms of a contract to which they were not a party. Plaintiffs do not challenge the validity of securitization or sue for breach of contract under the Pooling and Servicing Agreement ("PSA"). Plaintiffs do not seek to enforce contractual

---

[1] *See Santens v. Los Angeles Fin.*, 91 Cal.App.2d 197, 202 (1949) ("[T]he trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note."); *Cockrell v. Title Ins. & Trust Co.*, 42 Cal.2d 284, 292-293 (1954) (finding that the assignees of a note and deed of trust "stand in the same position as their assignor…and must prove their chain of title to the note in question.") ("The burden of proving an assignment falls upon the party asserting rights thereunder.").

provisions, seek benefits of the PSA, or assert claims or defenses available to the indorser and indorsee of the Note. Rather, Plaintiffs' claims are limited to their own interests – protection of their property rights.

For these reasons, Plaintiffs have standing to sue Defendants, and Plaintiffs' claim for Declaratory Relief is appropriate.

### C. Defendants Fail to Present or Apply Authoritative Law Based Upon a Proper Choice-of-Law Analysis

A two-part analysis must be employed to determine whether CSMC Trust's certificate holders are the owner of the Note such that the CSMC Trust's trustee is a proper party entitled to enforce the debt obligation. First, one must determine whether the mortgage loan was ever delivered and assigned to the CSMC Trust. This inquiry requires an analysis of the terms of the Trust instrument under the laws where the Trust was created. The second inquiry rests with whether the CSMC Trust is the beneficiary of the Note and Deed of Trust entitling it to foreclose under California law. Thus, the only relevance that the CSMC Trust and the PSA have to Plaintiffs' claims is that there must be a determination of whether or not the CSMC Trust, pursuant to the PSA, has standing to assert itself as Plaintiffs' creditor.

///

///

7

### 1.    Pursuant to Choice of Law Principles, the Laws of the State Designated in the Trust Agreement Control Its Construction

Under federal common law choice of law principles, a trust instrument is "construed in accordance with the rules of construction of the state designated for this purpose in the instrument." Restat. 2d of Conflict of Laws, §268. The laws of the state where the trust is created and administered control the construction of the trust instrument. *Robinson v. United States*, 632 F.2d 822 (9th Cir. 1980). The choice-of-law rules under California law are in accord, "The meaning and legal effect of a disposition in an instrument is determined by the local law of a particular state selected by the transferor in the instrument...." Cal. Prob. Code § 21103; *see also Ehrenclou v. MacDonald,* 117 Cal.App.4th 364, 369 (2004).

### 2.    The Relevant Trust Agreement Contains a New York Choice of Law Provision

The PSA sets forth that the creation and administration of the CSMC Trust would be governed by the laws of the state of New York:

SECTION 12.03
Governing Law.
THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS. **ER 243:26-244:6.**

Thus, a determination as to whether Plaintiffs' mortgage became part of the Trust corpus must be decided under New York law.

### 3. Pursuant to New York Common Law and Statutory Law, There was No Valid Conveyance of Plaintiff's Mortgage Loan To the CSMC Trust

Under New York law, there are four essential elements of a valid trust of personal property:  (1) a designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the **actual delivery** of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee." *Brown v. Spohr*, 180 N.Y. 201, 209-210 (N.Y. 1904).  Thus, there is no trust under the common law until there is a valid delivery of the asset in question to the trust.  *Id.*  If the trust fails to acquire property, then there is no trust over that property that may be enforced. *Kermani v. Liberty Mut. Ins. Co.*, 4 A.D. 2d 603 (N.Y. App. Div. 3d Dep't 1957). For a transfer to a New York common law trust, the mere recital of a transfer is insufficient to effectuate a transfer; there must be delivery in as perfect a manner as possible.  *Vincent v. Putnam*, 248 N.Y. 76, 83 (N.Y. 1928).

///

///

///

9

New York law provides that a trustee's authority is limited to that provided in the trust documents.[2]  Specifically, New York law provides that a trustee's acts in contravention of the Trust Agreement are void:

> "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."  N.Y. Est. Powers & Trusts § 7-2.4 (CLS 2012).

This statute has been in effect in New York in some form since at least 1870.  *See Anderson v. Mather*, 44  N.Y.  249 (N.Y. 1870).  Indeed, several New York courts have applied the statute, or its predecessors, in such a manner.  *See, e.g.*, *In re Application of Dana*, 465 N.Y.S.2d 102, 105 (N.Y.Sup. Ct. 1982); *Dye v. Lewis*, 324 N.Y.S.2d 172, 175 (N.Y. Sup. Ct. 1971).

Because the PSA both creates the CSMC Trust and purports to sell the loans into the trust, the conditions of such sale set forth in the PSA must be carefully adhered to and not be subject to any variance or exception outside the four corners of the contract.  According to New York law, if those terms and conditions are not properly followed, the sale may be void.

---

[2] William Xenephon Weed, Warren's Weed New York Real Property Ch. No. 14-140, § 140.58 (Matthew Bender 2012), ("It is a fundamental principle of trust law that the instrument under which the trustee acts is the charter of his rights. Therefore, in administering the trust, he must act in accordance with its terms. This rule applies to every kind of trustee, regardless of whether the trustee is to hold, invest or pay over income, or to sell or liquidate for the benefit of creditors.").

Plaintiffs' SAC sets forth facts demonstrating not only that their mortgage note was never assigned their mortgage note to the CSMC Trust, but also that the assignment of the mortgage loan could not have successfully been assigned to the CSMC Trust by MERS in 2010—four years after the closing of the Trust. **ER 244:26-245:3, 248:19-249:21.** Taken as true, as the lower court must in ruling on a Motion to Dismiss, Plaintiffs' allegations adequately support a cause of action for Declaratory Relief to determine if the CSMC Trust was their true creditor.

### 4.    Defendants Fail To Provide Any Legal Authority Showing New York Law Does Not Apply

In order to avoid the inescapable conclusion that a mortgage loan could not have been assigned to the CSMC Trust four years after its creation, Defendants ignore existing New York statutory and applicable case law, and set forth a novel legal theory requiring the Court to take leaps in logic which are not only unexplained, but unsupported by the scant legal authority to which Defendants cite. For instance, Defendants first claim that under EPTL § 11-1.1(a), business trusts are "excluded." Answering Brief of Defendants, p. 14. While not specifying why the CSMC trust is a "business trust," or from what the business trusts are "excluded," Defendants appear to argue that EPTL § 11-1.1(a) excludes the CSMC Trust from <u>all</u> New York Trust law. First, a closer look at EPTL § 11-1.1(a)

11

reveals that this section bears no relation to the issues presented here as it sets forth the general powers of a fiduciary for estate trusts, not securitization trusts.

Next, Defendants cite to *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp.2d 162, 183 (S.D.N.Y. 2011) to broadly conclude that the use of commercial trusts as securitization vehicles, as here, necessarily requires the application of specialized law distinct from generalized trust principles. (Again, it is unclear which "specialized law" should apply). As with Defendants' first argument, *Ellington* is similarly inapplicable since that case considered whether hedge-fund plaintiffs had standing, under N.Y. G.O.L. § 13-107, to assert claims against a servicing company servicing mortgage–backed securities which they purchased years after the servicer had engaged in the wrongful conduct alleged. Finding that the servicing companies were not "obligors, depositaries, or guarantors" under § 13-107, the court referenced plaintiffs' own citation to a Austin W. Scott restatement which states, "The use of trusts in security transactions involves the general principles that apply to such transactions. Thus the ordinary principles of trust law do not always apply." 1 Austin W. Scott, The Law of Trusts, § 2.1.22 (5th Ed.2006). Without discussing how the Scott restatement applied to the case before it, the court found that the plaintiffs could not assert its claims against the servicer for other reasons. ("Moreover, even if common law trust principles applied here, Plaintiffs have not cited any authority

12

for the proposition that a transferee of an interest in a trust automatically assumes all of the transferor's claims…") *Id.* at 183. While the court referenced the Scott restatement, it did not provide any analysis about its application or legal merit. This is probably because the broad declaration by Austin W. Scott fails to explain what "specialized law distinct from generalized principles," should apply to securitization trusts. Defendants similarly fail to provide any explanation.

Not surprisingly, the Austin W. Scott treatise has received very little treatment by other courts or scholars. Indeed, the only analysis of this treatise comes from a Yale Law Journal where both the treatise and its author are discredited:

> "Austin W. Scott, the reporter, excluded commercial trusts from the Restatement on the ground that 'many of the rules of trust law are inapplicable in commercial settings.' Scott offered no support for that claim, which is wrong. The familiar standards of trust fiduciary law protect trust beneficiaries of all sorts, regardless of the terms of the transaction expressly contraindictate). Indeed, one of the great attractions of the trust for the transaction planner who is designing a business trust deal is the convenience of being able to absorb these standards into the ground rules for the deal, merely by invoking the trust label." The Yale Law Journal, 107 Yale L.J. 166,166 (1997-1998).

For these reasons, Defendants have failed to show why New York does not apply.

### D.    A Trustee Acting on Behalf of a Trust That Does NOT Actually Own the Loan Is Not Subject to an Exemption from FDCPA liability as a "Creditor" or for Foreclosure-related "Debt Collection Activity"

The basis for dismissing Plaintiffs' FDCPA claim, as set forth in the district court's January 5, 2012 ruling, was "because Defendant U.S. Bank is not a debt collector as the statute defines."  **ER 000c-000d**. In the court's March 20, 2012 ruling, Plaintiffs' FDCPA claim contained in the Second Amended Complaint was dismissed without leave on the grounds the court "found it substantively identical to Plaintiffs' First Amended Complaint."  **ER 472:18-19.**

There appears to be a fundamental misunderstanding of Plaintiffs' claim. Namely, Plaintiffs do _not_ assert that FDCPA applies to Trustees acting on behalf of Securitized Trusts that ***actually own*** the loans on which payments are being collected.  Indeed, we recognize the clear statutory language which excludes as "debt collectors," assignees of debt who are engaged in collection activities on behalf of the Trust-investors that obtained a beneficial interest in a loan.

However, Plaintiffs assert that FDCPA liability attaches where the factual allegations indicate a loan has ***not*** been effectively assigned or transferred to the principal, *i.e.,* the Trust-investors, on whose behalf the Trustee is purporting to act. Thus, the critical distinction here is, whereas accepting as true, Plaintiffs' allegations that the Trust lacks a valid interest in Plaintiffs' Loan, the statutory exemption simply does not apply to the subject Trustee.  In other words, here,

14

given that the Trustee is acting on behalf of a principal who "lacks an enforceable interest" in the debt, the Trustee does not qualify for the exemption in this instance. *See Castro v. Bank of America, N.A.,* Case No. CV-11-6142-GHK (AJWx) (C.D. Cal. December 19, 2011) (rejecting Defendants' argument that they are not "debt collectors" under the FDPCA based on this critical point.) Concerning the FDCPA claim, the court in *Castro* held:

> "Defendants argue that they are not "debt collectors" under the FDPCA because "creditors, mortgagors, mortgage servicing companies are not 'debt collectors' under the Act.' (citation omitted) We must reject this argument, however, because we are required to take as true Plaintiff's allegation that the Assignment of Deed of Trust was fabricated, and therefore that the Defendants had no legal, equitable, or pecuniary interest in Plaintiff's mortgage. **Without any interest in the mortgage, Defendants cannot be characterized as creditors or mortgagors of Plaintiff's loan. Thus, their argument – at this stage of the case—fails."** *Id* (emphasis added).

It should be noted that at present, there is no Ninth Circuit decisional case on point as to whether the statutory exemption would apply to a Trustee, acting on behalf of a Trust that did not obtain a valid interest. However, as the Sixth Circuit explains:

> The distinction between a creditor and a debt collector lies precisely in the language of § 1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–8 (6th

15

Cir.1996); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985). *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012).

Plaintiffs cite to the record to demonstrate the plain language and the April 16, 2010 date of **execution** of the Assignment purport that MERS "**hereby** grants, assigns, and transfers" the Note and Deed of Trust to U.S. Bank. According to the Assignment, the transfer of interest to U.S. Bank occurred one month **after** the filing of a Notice of a default which had, pursuant to the Declaration filed concurrently therewith, purportedly occurred by March 11, 2010. **ER 395-397** and **ER 404-:19-24.** Thus, Defendants' self-serving assertion that an assignment had actually occurred prior to default flies in the face of the Assignment and Notice of Default which were recorded on its behalf with the County Recorder's Office. Notably, U.S. Bank has sought these documents and facts to be judicially noticed when it served its purposes. **ER 370-372.** Defendants seek to assert purportedly false facts in order to take property but dispute these self-asserted facts in order to escape liability under the FDCPA. Defendants assert with hubris that they were not required to record any assignment. However, the absence of any requirement to record an assignment does not equate to permission to file a factually-false instrument.[3] Defendants cannot have it both ways. Based on the facts asserted by

---

[3] In fact, as detailed in Plaintiffs' claims for cancellation of a false instrument and for violation of UCL, such conduct is a criminal violation of the penal code and constitutes a felony.

16

Defendants in the record, U.S. Bank was assigned the Note and Deed of Trust in April 2010, **after** a default had occurred, and Defendant U.S. Bank is a "debt collector" as defined under the FDCPA.  Given that Plaintiffs dispute U.S. Bank's "creditor" status and interest in their Note, U.S. Bank cannot assert an exemption based upon "debt collection activity." In the very least, such assertion of disputed fact at this pleadings stage must be rejected.

### E.    Plaintiffs Properly Pled A Cause of Action For Business and Professions Code §17200

#### 1.    Plaintiffs' SAC Alleges Ongoing, Unlawful Conduct by Defendants

Defendants' unsupported claim that there is no ongoing conduct at issue is specifically contraindicated by Plaintiffs' SAC which alleges "[t]his conduct is ongoing and continues…" **ER 261:12-13.**

Defendants rely on a land contamination trespass and nuisance case, *Mangini v. Aerojet-General Corp.* 230 Cal. App. 1125 (1991), to support their argument that Plaintiffs' claims may not be redressed under Business and Professions Code §17200 ("UCL").  In *Mangini*, the plaintiffs were homeowners who filed suit against a chemical company, the prior lessees of the property, for contaminating the property with hazardous waste.  *Mangini* is factually inapposite because the *Mangini* plaintiffs filed suit in 1991, while the conduct alleged had occurred between 1960 and 1970.  On demurrer, the court ruled that because

17

"defendant's wrongful conduct occurred many years ago, plaintiffs may not rely on the law of continuing nuisance to create a present pattern or practice of conduct required for relief under section 17200." *Id.* at 1156.

Here, Plaintiffs clearly allege conduct that is both current and ongoing. Plaintiffs do not allege that Defendants' conduct has ceased. **ER 261:12-13.** Moreover, the UCL seeks injunctive relief.  Moreover, since *Mangini* was decided in 1991, the Legislature amended the UCL statute to provide that "unfair competition shall mean and include *any* unlawful, unfair or fraudulent business *act* or practice. . . ." (§ 17200, italics added.)  Accordingly, under the current version of the statute, even a single act may create liability. *United Farm Workers of America v. Dutra Farms*, 83 Cal.App.4th 1146 (2000).

Additionally, it is irrelevant that the foreclosure has already occurred.  "It is settled that the voluntary discontinuance of alleged illegal practices does not remove the pending charges of illegality from the sphere of judicial power or relieve the court of the duty of determining the validity of such charges where by the mere violation of a party the challenged practices may be resumed." *Marin County Bd. of Realtors, Inc. v. Palsson*, 16 Cal.3d 920, 929 (1976).  It is also well-established that an appeal is not rendered moot where the parties raise substantial questions of public interest that are likely to recur. *Id.*

18

### 2.    The SAC Articulates Defendants' Personal Participation in Unfair, Unlawful, and Fraudulent Practices

Without any citation to the record, Defendants summarily conclude that Plaintiffs fail to distinguish between the conduct of each of the named Defendants. In direct contrast, however, the SAC distinctly specifies the actionable conduct of each individual Defendant. **ER 260:13-261:11**.  To support their argument, Defendants rely on the inapplicable case of *Emery v. Visa Int'l Service Ass'n,* 95 Cal.App.4th 952 (2002) for the proposition an agent cannot be liable for the actions its principal.  However, unlike *Emery*, Plaintiffs' allegations do not involve agency liability.  Instead, their allegations are based upon Defendants' personal "participation in the unlawful practices" and "unbridled control over the practices that are found to violate Cal. Bus. & Prof. Code §§ 17200 or 17500." *Id*.  Because Plaintiffs have pled specific allegations as to the wrongful conduct of each of the Defendants, this argument should be dismissed.

### 3.    Violations of Any Federal, State, or Local Law May Serve as the Basis for a UCL Claim

Plaintiffs allege Defendants have violated 15 U.S.C. § 1692, 15 U.S.C. §1641(g), Cal. Penal Code § 532f (a)(4).  **ER 239: 19-24.**  Additionally, Plaintiffs allege Defendants engaged in unfair and unlawful business practices, including, *inter alia*, acting as a beneficiary, collecting Plaintiffs' payments, reporting late

19

payments to credit bureaus and wrongfully foreclosing on Plaintiffs home, all without legal authority to do so. "[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134, 1143 (2003). Plaintiffs allege Defendants have engaged in practices that are: (1) unfair, (2) likely to deceive, and (3) unlawful. **ER 259:21-261:18.**

It appears that the gravamen of Defendants' argument is that Plaintiffs do not identify fraudulent claims in addition to unlawful and unfair claims. This bold presentation of the law is however, incorrect. "'In order to state a claim for a violation of the [UCL], a plaintiff must allege that defendant committed a business act that is either fraudulent, unlawful, or unfair.' *Levine v. Blue Shield of California*, 189 Cal. App. 4th 1117, 1136(2010). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank*, 691 F.3d 1152 (9th Cir. Cal. 2012).

Unfortunately for Defendants, Plaintiffs set forth allegations concerning each of Defendants' unfair, unlawful, <u>and</u> fraudulent conduct. **ER 259:13-261:26.**

Defendants reliance on *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.Supp.2d 1092 (E.D. Cal. 2010) is no more instructive. In *Lane*, the court held "[p]laintiffs' claim under the UCL is vague and conclusory, simply alleging that 'the unlawful

acts and practices of [d]efendants alleged herein constitute unlawful business acts and/or practices…'" *Id.* at 1103-04.

Contrary to Defendants' unsupported arguments and the inapplicable cases they cite, Plaintiffs' claims are detailed and specific.  Further, as alleged above, Plaintiffs parse out the conduct of each individual Defendant. **ER 260:13-261:11.**

### F.     Defendants Improperly Include Additional Extraneous Issues Which Are Inapplicable And Not Asserted by Plaintiffs

Rather than address Plaintiffs' core allegations—that their mortgage loan was never delivered to the CSMC Trust as required under the PSA and applicable New York law—Defendants inject inapplicable and irrelevant legal issues to conclude that Plaintiffs are barred from bringing their claims for their alleged failure to tender, to suffer prejudice, and acquire "standing" to challenge a foreclosure.  These attacks go nowhere.

First, Defendants claim that Plaintiffs lack "standing" to assert their claims on the basis that California courts have refused to permit plaintiffs from ever challenging a foreclosure.  Answering Brief of Defendants, p. 9-10.  Contrary to Defendant's overbroad and self-serving declaration, the court in *Gomes v. Countrywide*, 192 Cal.App.4th 1149 (2011) made no such finding and actually acknowledged that a defect in the assignment of deed of trust *could* provide the basis for alleging that the wrong party was foreclosing.  *Id.* at 1155-6.  While

21

*Gomes* did find that a homeowner could not simply delay a foreclosure by filing a lawsuit and "testing" each parties' authority to foreclose without any factual basis to assert such claims, it made clear that a homeowner *could* challenge a foreclosure if the homeowner presented a specific factual basis for asserting that the wrong party was foreclosing. *Id.*

It is important to note that *Gomes* is a California appellate court decision and its holding—that a homeowner has the requisite "standing" to challenge a foreclosure if he provides a specific factual basis—must be followed. The Ninth Circuit "must follow the decisions of the state's highest court," (*Johnson v. Fankell*, 520 U.S. 911, 916 (1997)), and "[n]either this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State." *International Soc. for Krishna Consciousness of Calif., Inc. v. City of Los Angeles*, 530 F.3d 768, 770 (9th Cir. Cal. 2008).

Defendants cite a series of non-binding and inapplicable cases in an attempt to bolster their "lack of standing" argument, but almost entirely ignore the core findings in *Gomes v. Countrywide*, which specifically permit a homeowner to challenge a foreclosure if specific facts are alleged. Citing *Ohlendorf v. Am. Home Mortg.*, No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at *21-24 (E.D. Cal. March 31, 2010), the *Gomes* court acknowledged that a defect in the

22

assignment of deed of trust *could* provide the basis for alleging that the wrong party was foreclosing. *Gomes v. Countrywide*, 192 Cal.App.4th 1149, 1156-7 (2011).

Here, Plaintiffs have adequately pled fact-specific allegations that their mortgage loan was never delivered to the CSMC Trust and that the invalid Assignment of Deed of Trust was likely fabricated to create the appearance of such a transfer. **ER 243:9-17, 248:7-9.**

Next, Defendants claim that Plaintiffs claims are barred due to their failure to tender the full amount due under the mortgage loan. As a threshold matter, it must be noted that the status of payment (to the proper party, which Plaintiffs contend are <u>not</u> Defendants) cannot strip a homeowner of his right to cancel an assignment of deed of trust he contends is false. Plaintiffs' creditworthiness simply does not entitle a third-party stranger to record a false Assignment or strip them of their right to cancel a false assignment and/or address the injury caused thereby.[4]

---

[4] The court in a similar case articulated the flaws in Defendants' argument that Plaintiffs lose standing if "they failed to pay their Loan and there are no competing claimants asserting that they, rather than Respondents, were the ones really entitled to enforce the terms of the Loan:"

> Defendants' final (and weakest) argument is that homeowners like plaintiffs "will not be prejudiced" if the chain of assignments from original lender to foreclosing entity were immune to debtor challenge.

Defendants' tender argument fails for two additional reasons. First, the rule that a plaintiff must tender in the context of a foreclosure action has been modified by a long list of federal district courts and recently, by a California appeals court in *Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112-13 (2011). Not surprisingly, Defendants fail to mention this case since it creates exceptions to the tender rule, including when the action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *See Lona v. Citibank, N.A.*, 202 Cal.App.4th 89, 112-13 (2011) (identifying four exceptions to the tender rule). *See also*, *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM (CWx), 2011 U.S. Dist. 2011 WL 2533029 at *9-10 (C.D. Cal., June 24, 2011), (citing *Onofrio v. Rice*, 55 Cal.App.4th 413, 424 (1997)); *see also Vogan v. Wells Fargo Bank, N.A.*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, *7-8

---

> After all, the argument apparently goes, the [plaintiffs] owe the money to somebody. In truth, the potential prejudice is both plain and severe – foreclosure by the wrong entity does not discharge the homeowner's debt, and leaves them vulnerable to another action on the same note by the true creditor... MasterCard has no right to sue for debts rung up on a Visa card, and that remains true even if MasterCard has been assigned the rights of another third party like American Express. Unless and until a complete chain of transactions back to the original lender is shown, MasterCard remains a stranger to the original transaction with no claim against the debtor. And that is a fair description of this case in its present posture. In sum, a standing issue is lurking here, but only as to the defendants, not the plaintiffs.

*Miller v. Homecomings Financial LLC et al.,* No. 4:11-cv-04415, 2012 U.S. Dist. LEXIS 111022, (S.D. Tex. Aug. 8, 2012).

(E.D. Cal. Nov. 17, 2011) ("The Court holds that the tender requirement does not apply to this case because Plaintiff is challenging the beneficial interest held by U.S. Bank in the deed of trust, not the procedural sufficiency of the foreclosure itself.").

Here, Plaintiffs allege just such malfeasance and directly challenge the underlying validity of the debt and Defendants' right to enforce the deed of trust securing the debt. **ER 247:15-248:1.** As such, Plaintiffs' claims fall within an exception to the tender rule and no requirement to tender should be imposed.

Defendants' final attack—that Plaintiffs have not suffered prejudice—must similarly be dismissed. This argument not only defies common sense, but runs contrary to what some federal courts, who have encountered this argument, have held. For example, in *Tamburri v. Suntrust Mortgage, Inc.*, No. C-11-2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011), the court concluded that a homeowner suffers prejudice where a foreclosing entity initiates foreclosure prior to acquiring any beneficial interest in the deed of trust. The court noted, "Assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default." *Id.* at 46.

Here, Defendants have failed to cite to any legal authority requiring a showing of prejudice. But even if such a requirement existed, Plaintiffs have

25

undeniably pled facts showing they have suffered a significant loss: their home of over 30 years. **ER 250:22-23.**

These incongruent legal theories have no application to the case at bar and do not provide a basis to dismiss Plaintiffs' SAC.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this Court to reverse the district court's orders granting dismissal in favor of Defendants.

DATE: December 20, 2012                BERGMAN & GUTIERREZ LLP

                                By:   */s/ Deborah P. Gutierrez*
                                      PENELOPE P. BERGMAN
                                      DEBORAH P. GUTIERREZ
                                      Attorneys for Plaintiffs-Appellants,
                                      Paul Junod and Patricia Junod

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitations set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses a proportional typeface and 14-point font, and contains 6013 words.

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 202 I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Lisa Arreola

LISA ARREOLA